United States District Court
Northern District of California

UNITED STATES OF AMERICA,

Plaintiff,

v.

MONLETO LAMONT HOLLY,

Defendant.

Case No.: CR 08-00469-1 SBA (KAW)
CR 14-00238-RS-1
CR 14-70470-MAG

ORDER OF DETENTION

## I. BACKGROUND

On December 16, 2008, Monleto Lamont Holly ("Holly") was sentenced to 84 months in custody and 4 years of supervised release for possession with intent to distribute crack cocaine in violation of 21 U.S.C. Section 841(a)(1), (b)(1)(B)(iii), a Class B felony. On February 5, 2013, his sentence was reduced to 70 months custody pursuant to 28 U.S.C. § 994(u). Holly has been on supervised release since March 28, 2013. Holly has 3 prior Forms 12, one of which was for use of a controlled substance and resulted in the revocation of his supervised release and a new sentence imposing 2 months in custody, 46 months of supervised release, and conditions that Holly reside in a halfway house for 4 months and stay away from North Richmond unless granted permission by U.S. Probation.

On April 2, 2014, Holly's probation officer filed a petition alleging that Holly violated two conditions of his supervised release, namely, the statutory condition that he shall not commit another federal, state or local crime and the special condition that he shall not own or possess any firearms, ammunition, destructive devices, or other dangerous weapons.

In the petition, the probation officer specifically alleged that on March 25, 2014, in San Francisco, California, Holly violated California Penal Code Sections 12080 – Prohibited Person in Possession of a Firearm, 12100 – Possession of a Loaded Firearm, and 12173 – Prohibited

Person in Possession of Ammunition. According to the San Francisco Police Department Report, on March 25, 2014, SFPD received information from a reliable confidential informant that an individual on Eddy Street was in possession of a firearm. Officers went to Eddy Street and saw Holly, who fit the general description of the armed individual. Holly was walking with another individual and wearing a backpack. Although the officers were driving unmarked patrol vehicles, they appeared to attract Holly's attention. At some point, Holly discarded the backpack and the other individual ran in an apparent effort to avoid police. Officers then returned to where Holly had been standing before taking flight, and recovered a backpack from some bushes or vegetation. SFPD officers recovered a loaded Luger Intratec 9mm with an extended magazine. Holly is a convicted felon, currently on supervised release for possession with intent to distribute crack cocaine.

On April 1, 2014, the U.S. Attorney's Office filed a criminal complaint charging Holly with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). On April 22, 2014, the court held a hearing on the Government's motion to detain Defendant pending his supervised release violation hearing and trial in the new criminal case. Defendant was present, in custody, and represented by Criminal Justice Act Panel Attorney Mark Rosenbush. Assistant United States Attorney James Mann appeared on behalf of the Government. Probation Officer Sonia Lapizco was also present. For the reasons stated below, the court orders that Defendant be detained.

## II. LEGAL ANALYSIS

Because Defendant is charged with a supervised release violation, Defendant bears the burden of establishing that he is not a flight risk or a danger to the community by clear and convincing evidence. FED. R. CRIM. P. 32.1(a)(6); 18 U.S.C. § 3143.

Holly requests the court to release him on stringent conditions including electronic monitoring, his previous supervised release conditions and a $25,000 unsecured bond. He also proposed to live with his grandmother in San Pablo, California or in a halfway house. He argued that the firearm wasn't his and that he had only agreed to transport the gun for money because he needed the money. Defense counsel argued that Holly has a drug problem and needs treatment.

He further argued that but for Holly's status as a felon, the possession of the firearm itself would not be a crime. The court disagrees. Even if Holly was not a convicted felon, it would have been unlawful for him to possess a loaded firearm in a backpack on a public street.

The Government persuasively argued that detention is appropriate in this case. The Government and Probation noted that Holly was already on very stringent supervised conditions at the time of his arrest. In fact, he had almost completed his 4 months at a halfway house when he was arrested. In addition to the fact that he was on supervised release when the new offense occurred, his criminal history includes three felony and one misdemeanor conviction. Indeed, his criminal activity has continued unabated with the exception of his period of incarceration since he was a minor, and has continued while on various grants of community supervision. He also has numerous arrests for weapons and drug related offenses, and his local probation has been revoked on numerous occasions. All of this demonstrates that Holly is not amendable to community supervision. Further, Holly's proposed sureties interviewed by Pretrial Services are not viable sureties because they had significant criminal histories.

In addition, at the hearing, Probation Officer Sonia Lapizco informed the court that during her supervision of Holly, she has received at least 2 anonymous telephone calls from individuals stating that Holly was seen brandishing a Tech 9 firearm – the same type of firearm found in his discarded backpack by the SFPD officers. She also stated that Holly has been loitering in North Richmond without the permission of Probation. Further, Probation Officer Lapizco had to meet with the Director of the halfway house where Holly was staying to intervene on his behalf because, according to the Director, Holly was extremely hostile to the halfway house staff during his time there.

In light of the above, and having considered the proffers by the parties and the probation officer, and the arguments of counsel, the court finds that Defendant has not shown by clear and convincing evidence that he is not a risk of flight or a danger to the community.

Therefore, Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded

reasonable opportunity for private consultation with counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

    IT IS SO ORDERED.

DATED: April 28, 2014

_____
KANDIS A. WESTMORE
United States Magistrate Judge